**17 MAG 1036**

ORIGINAL

Approved:  *Jessica Greenwood*
JESSICA GREENWOOD
SCOTT HARTMAN
JARED LENOW
Assistant United States Attorneys

U.S. DISTRICT COURT FILED

FEB 1 0 2017

S.D. OF N.Y.

Before:  THE HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York

DOC #__ ___

- - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - v. -

DAJAHN MCBEAN,

           Defendant.

:  **COMPLAINT**

:  Violation of
  18 U.S.C. §§ 1344 and 2

:  COUNTY OF OFFENSE:
  NEW YORK

:

- - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

      JAMES TASEVOLI, being duly sworn, deposes and says that he is a Detective with the New York City Police Department, and charges as follows:

### COUNT ONE
(Bank Fraud)

      1.    In or about November 2016, in the Southern District of New York and elsewhere, DAJAHN MCBEAN, the defendant, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the FDIC, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, MCBEAN deposited forged checks into a Bank of America account (the "Fraud Bank Account").

      (Title 18, United States Code, Sections 1344 and 2.)

      The bases for my knowledge and for the foregoing charge are, in part, as follows:

2.    I am a Detective with the New York City Police Department ("NYPD"), and I have been personally involved in this matter.  This affidavit is based upon my investigation; my conversations with law enforcement agents, witnesses, and others; and my examination of reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## OVERVIEW

3.    As described in greater detail below, DAJAHN MCBEAN, the defendant, conspired with others known and unknown to create forged checks and deposit the forged checks into the bank account of a third party.

## DEFINITIONS

### The MCBEAN Residence

4.    Based on my review of records maintained by the New York Department of Corrections, as well as surveillance that I have conducted, I have learned that DAJAHN MCBEAN, the defendant, resides at 1109 East 82nd Street, Brooklyn, New York, 11236 (the "MCBEAN Residence").

### The MCBEAN Cellphone

5.    Based on my review of records maintained by the New York State Courts and the New York Department of Corrections, I have learned, among other things, the following:

a.    DAJAHN MCBEAN, the defendant, was last released from incarceration in New York State on or about November 1, 2016 and has been on parole since that time.

6.    In or about November 2016, the parole officer for DAJAHN MCBEAN, the defendant, provided me with the following cellphone number that MCBEAN had provided to parole: (516) 853-5888 (the "MCBEAN Cellphone").

7.    Based on my review of law enforcement databases, I have learned that T-Mobile/Omnipoint is the service provider for the MCBEAN Cellphone.

3

## The MCBEAN Facebook Account

8.    Based on my review of my review of publicly available
Facebook content, as well as non-publicly available Facebook
content and other data obtained through a legally valid search
warrant, I have learned the following facts, among others:[1]

        a.   The owner of the Facebook account with the user
name    "Roshaun    Thompson    (Jeezy    Mula)"    and    URL    of
https://www.facebook.com/profile.php?id=100010886235083    appears
to be DAJAHN MCBEAN, the defendant, based on the following facts,
among others:

            i.    MCBEAN is depicted in the profile photographs
for that account.

            ii.   On or about November 21, 2016, the MCBEAN
Facebook account sent messages to a third party Facebook account
containing the number for the MCBEAN Cellphone and stating, in
substance and in part, "This my line."

## The Fraudulent Checks and the Fraud Bank Account

9.    As detailed below, the fraud scheme at issue involved
the deposit of six fraudulent checks ("the Fraudulent Checks")
into a Bank of America account (the "Fraud+ Bank Account").   The
Fraudulent Checks listed bank account and other information
belonging to two victims ("Victim-1" and "Victim-2" respectively).

---

[1] The Facebook business records for the MCBEAN Facebook Account
list the dates and times of actions taken in connection with the
account and the IP address associated with each of those
actions.   The activity times are listed in Coordinated Universal
Time ("UTC"), which I understand to be five hours ahead of
Eastern Time ("ET").   As such, and as an example, where
Facebook records for the MCBEAN Facebook Account reflect
activity from 12:00 a.m. UTC to 4:59 a.m. UTC on November 23,
2016, I understand that such activity occurred between 7:00 p.m.
ET and 11:59 p.m. ET on November 22, 2016.   For ease of
reference, the dates and times cited in the records for the
MCBEAN Facebook have been converted from UTC to ET.

4
## THE FRAUDULENT DEPOSITS

10. Based on my review of bank records received from Bank of America, as well as my conversations with Bank of America representatives, I have learned the following facts, among others:

a. On or about November 22, 2016, the Fraudulent Checks were deposited into the Fraud Bank Account through mobile deposit.

b. Bank of America maintains records of the IP addresses and devices used to make mobile deposits into Bank of America accounts. According to Bank of America's records, the Fraudulent Checks were deposited from a T-Mobile iPhone using the IP address 24.184.25.72. As noted previously, the MCBEAN Cellphone is a T-Mobile device. See supra ¶ 7.

c. The Fraudulent Checks were dated November 21, 2016; were made payable to the accountholder of the Fraud Bank Account; and were valued at approximately $366.31, $369.92, $354.49, $361.11, $362.69, and $518.47, respectively.

d. Five of the six Fraudulent Checks purported to be written on a Bank of America account belonging to Victim-1. One of the six Fraudulent Checks purported to be written on a Citibank account belonging to Victim-2.

e. Based on my review of open-source materials, I have learned that at the time of the events described herein, the deposits of Bank of America and Citibank were insured by the FDIC and that Citibank is a division of Citigroup, which is headquartered in Manhattan, New York.

11. Based on my conversations with a NYPD investigator who spoke to a representative of Victim-1, I have learned the following facts, among others:

a. The Victim-1 Fraudulent Checks appear to be fraudulent.

b. Specifically, the routing number and bank account number listed on the Victim-1 Fraudulent Checks are associated with a legitimate Bank of America account belonging to Victim-1.

c. However, the Victim-1 Fraudulent Checks were not issued by Victim-1 and are not consistent with prior checks legitimately issued by Victim-1. For example, the company name

listed on the face of the Victim-1 Fraudulent Checks is different than the company name shown on legitimate checks issued by Victim-1. The form of the Victim-1 Fraudulent Checks also differs from Victim-1's legitimate checks.

       d.   Victim-1 is not familiar with the accountholder of the Fraud Bank Account and has not written checks to the accountholder.

    12.  Based on my conversations with an NYPD detective who spoke to a representative of Victim-2, I have learned the following facts, among others:

       a.   The Victim-2 Fraudulent Check appears to be fraudulent.

       b.   Specifically, the routing number and bank account number listed on the Victim-2 Fraudulent Check are associated with a legitimate Citibank account belonging to Victim-2.

       c.   However, the Victim-2 Fraudulent Check was not issued by Victim-2 and is not consistent with prior checks legitimately issued by Victim-2. For example, the company name and address listed on the face of the Victim-2 Fraudulent Check are different than those shown on legitimate checks issued by Victim-2. In other words, the address listed for Victim-2 is incorrect. The form of the Victim-2 Fraudulent Check also differs from Victim-2's legitimate checks.

       d.   Victim-2 is not familiar with the accountholder of the Fraud Bank Account and has not written checks to the accountholder.

       e.   Victim-2 is a business located in Manhattan, New York, in the Southern District of New York.

    13.  Based on my review of my review of publicly available Facebook content, as well as non-publicly available Facebook content and other data obtained through a legally valid search warrant, I have learned the following facts, among others:

       a.   On or about November 21, 2016 – the day before the Fraudulent Checks were deposited into the Fraud Bank Account – a series of messages were sent to and from the MCBEAN Facebook Account and a third party Facebook Account. These messages include, among other messages, the following messages, summarized here in substance and in part:

    i.  A message sent from the MCBEAN Facebook Account stating, in substance and in part: "Where the OA at."

    ii.  Messages from the third party Facebook account stating, in substance and in part "The bitch got it" and "Ima send yu the info now."

    iii.  A message from the third party Facebook account sending, in substance and in part, an email address identified as a "user name" and a "pw."

    iv.  A message from the third party Facebook account stating, in substance and in part, "Boutta send the answers now."

    b.  Based on my training, experience, and participation in this investigation, I believe that the foregoing messages refer to DAJAHN MCBEAN, the defendant, requesting and receiving the information for a Bank of America ("BOA" or "OA") bank account – including the username and password for online banking access and the answers to security questions – for use in a bank fraud scheme.

  14.  Based on my review of bank records received from Bank of America, and based on my conversations with a Bank of America representative, I have learned the following facts, among others:

    a.  The email address associated with the Fraud Bank Account is the same "user name"/email address that was described as sent to the MCBEAN Facebook account on or about November 21, 2016. *See* supra ¶ 13(a)(iii).

    b.  After the deposits of the Fraudulent Checks on or about November 22, 2016, Bank of America's risk department identified the Fraudulent Checks as fraudulent and put the Fraud Bank Account in closure, such that the account was frozen and ultimately closed. As such, the Fraudulent Checks could not be withdrawn from the Fraud Bank Account.

## THE BANK OF AMERICA CALLS

  15.  Based on my review of call data records and location data for the MCBEAN Cellphone, I have learned the following facts, among others:[2]

---

[2] Based on my conversation with a T-Mobile representative, and as further detailed in footnote 1, supra, I have learned that T-

7

a.    At approximately 5:44 p.m. on November 22, 2016, the MCBEAN Cellphone placed a call to 1-800-933-6262.  Based on a telephone call that I placed to this number, I have learned that 1-800-933-6262 is the phone number for Bank of America Online and Mobile Banking Services.

b.    At approximately 5:52 p.m. on November 22, 2016, the MCBEAN Cellphone placed a call to 1-877-833-5617.  Based on a telephone call that I placed to this phone number, I have learned that 1-877-833-5617 is the phone number for Bank of America ATM Debit Card Customer Protection.

c.    Based on historical cell site data obtained through a valid court order, I have learned, among other things, that during both of these calls, the MCBEAN Cellphone accessed a cellphone tower in the vicinity of 1041 East 83rd Street, Brooklyn, New York, 11236.

d.    Based on my training, experience, and participation in this investigation, I understand that if the MCBEAN Cellphone were used to place calls at the MCBEAN Residence, the location data from the MCBEAN Cellphone would register a "ping" to a cellphone tower in the near vicinity of the MCBEAN Residence. Based on my review of open-source materials, I have also learned that 1041 East 83rd Street, Brooklyn, New York, 11236 is approximately 0.2 miles from the MCBEAN Residence.  Based on the same information and experience, I believe that the foregoing calls were placed from the MCBEAN Residence.

16.    Based on my conversations with an NYPD Police Officer who spoke to MCBEAN's parole officer, I have learned that the calls made from the MCBEAN Cellphone to Bank of America on November 22, 2016, *see* supra ¶ 15, were made at a time when DAJAHN MCBEAN, the defendant, was at the MCBEAN Residence.  Specifically, I have learned that data obtained from the GPS tracking device affixed to MCBEAN as a condition of his parole shows that MCBEAN arrived at the MCBEAN Residence at approximately 3:44 p.m. on November 22, 2016 and stayed at the MCBEAN Residence for the remainder of that day.

---

Mobile call data records and location data list the dates and times of calls in Coordinated Universal Time ("UTC"), which I understand to be five hours ahead of Eastern Time ("ET").  For ease of reference, the dates and times cited in the T-Mobile records for the MCBEAN Cellphone have been converted from UTC to ET.

8

17.   Based on my review of audio recordings obtained from Bank of America, I have learned the following facts, among others:

a.   Bank of America's records for the Fraud Bank Account include, among other things, audio recordings for at least one call placed from the MCBEAN Cellphone to Bank of America on or about November 22, 2016.

b.   Specifically, the audio recordings include: (1) a recording dated November 22, 2016, which spans from 5:46 p.m. to 5:50 p.m.; and (2) a recording dated November 22, 2016, which spans from 5:50 p.m. to 5:52 p.m.  The incoming call number associated with both recordings is the number of the MCBEAN Cellphone.

c.   In the first recording, a male caller identifies himself using the first and last name of the accountholder of the Fraud Bank Account.   Based on my review of law enforcement databases, I have learned that the accountholder of the Fraud Bank Account is female.   The male caller states, in substance and in part, that he was having a problem with his online banking, which was locked.   The Bank of America representative asks the male caller to provide the answers to account security questions.   In response, the male caller provides the birth date and address of record for the female accountholder of the Fraud Bank Account. Near the end of the first recording, the Bank of America representative tells the caller, in substance and in part, that she is transferring him to another department.

d.   In the second recording, the male caller again identifies himself using the first and last name of the female accountholder of the Fraud Bank Account.   The caller also provides the Bank of America representative with the last four digits of the bank card that he was using.   The Bank of America representative tells the male caller, in substance and in part, that the card was blocked.   The Bank of America representative offers to transfer the male caller to another department to determine the reason why the card was blocked and provides the male caller with the following telephone number for that department:   877-833-5617.

e.   I have compared the Bank of America audio recordings described above to recorded telephone calls between DAJAHN MCBEAN, the defendant, and others during his incarceration at a detention center at Rikers Island and have determined that MCBEAN appears to be the male caller on the Bank of America audio recordings.

9

18.   Based on my review of non-publicly available Facebook content and other data obtained through a legally valid search warrant, I have learned that the calls made from the MCBEAN Cellphone to Bank of America on November 22, 2016, *see* supra ¶ 15, were made during a time when the IP address 24.184.25.72 was being used to access the MCBEAN Facebook Account.   Specifically, based on the foregoing information, I have learned the following facts, among others:

a.   The IP address 24.184.25.72 was used to access the MCBEAN Facebook Account at least five times between approximately 4:34 p.m. ET and 8:52 p.m. ET on November 22, 2016.   No other IP address was used to access the MCBEAN Facebook Account during this time period.

WHEREFORE, deponent respectfully requests that DAJAHN MCBEAN, the defendant, be imprisoned or bailed, as the case may be.

*Det* _____ # 3037
DETECTIVE JAMES TASEVOLI
NEW YORK CITY POLICE DEPARTMENT

Sworn to before me this
10th day of February, 2017

_____
THE HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK